IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES S.,[1]

          Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 3:25-cv-00928-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Charles S. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

## I.    PLAINTIFF'S APPLICATION

Plaintiff filed a DIB application on May 16, 2019, alleging a disability onset date of August 18, 2018.[2] (Tr. 291-95.) Following a hearing before an Administrative Law Judge ("ALJ") on April 5, 2022 (*id.* at 56-86), the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 117-36.) The Appeals Council remanded the ALJ's decision and Plaintiff appeared at a second hearing on February 15, 2024, at which Plaintiff and a vocational expert ("VE") testified. (*Id.* at 34-55.)

On April 17, 2024, the ALJ issued a second written decision denying Plaintiff's application. (*Id*. at 15-27.) On March 26, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2023 (Tr. 17) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2023, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

PAGE 3 – OPINION AND ORDER

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's claim for benefits pursuant to the process described above. (Tr. 15-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 18, 2018, the alleged onset date. (*Id.* at 17.) At step two, the ALJ found that Plaintiff suffered from the following severe medically determinable impairments: cervical and lumbar spine conditions. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*. at 19-20.) The ALJ then concluded that Plaintiff had

PAGE 4 – OPINION AND ORDER

the residual functional capacity ("RFC") to perform "light work . . . except he could occasionally climb and could occasionally stoop, kneel, crouch and crawl and could frequently reach overhead bilaterally." (*Id.* at 20.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a professor, accountant, investment analyst, commercial loan analyst, and portfolio credit analyst. (*Id.* at 25-26.) At step five, the ALJ found that, based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including marking clerk, office helper, packager, and routing clerk. (*Id*. at 26.)

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly evaluating the medical opinion of his licensed acupuncturist, Shalena Havens ("Havens"), and by discounting his symptom testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 1-12, ECF No. 9.[3])

## I.    MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ improperly discounted the opinion of Havens. (Pl.'s Br. at 3-8.) The Commissioner responds that the ALJ reasonably discounted Havens' opinion as not persuasive because it was poorly supported and inconsistent with other evidence. (Def.'s Br. at 10-13, ECF No. 11.)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical

---

[3] Plaintiff did not file a reply brief.

PAGE 5 – OPINION AND ORDER

opinions." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]'" "the regulations

PAGE 6 – OPINION AND ORDER

mandate discussion of these other factors[.]" *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

The Court concludes that the ALJ did not commit harmful error in evaluating Havens' opinion.

### 1.    Havens' Opinion

On September 8, 2019, Havens provided an opinion on Plaintiff's physical functional capabilities. (Tr. 981-86.) She based her opinion on Plaintiff's fourteen acupuncture visits between October 27, 2018, and July 6, 2019. (*Id.* at 981.) Havens noted that Plaintiff's diagnoses were lumbar radiculopathy and right hip pain (sciatica) and his symptoms were chronic right hip and lumbar pain with radiation to his leg and occasionally to his foot. (*Id.*)

Havens opined that Plaintiff's maximum ability to stand and walk was two hours during an eight-hour workday with normal breaks and his maximum ability to sit was less than two hours. (*Id.* at 983.) Havens stated that Plaintiff could sit for thirty minutes before changing position, could stand for sixty minutes before changing position, must walk around every forty-

PAGE 7 – OPINION AND ORDER

five minutes for five minutes, requires the ability to shift positions at will, and would sometimes need to lie down at unpredictable intervals during a work shift. (*Id.* at 983-84.) Havens based these limitations on the instability of Plaintiff's L2-S4 paraspinal muscles, piriformis syndrome,[4] and lumbar radiculopathy. (*Id.* at 984.)

Havens further opined that Plaintiff could only occasionally (i.e., less than one-third of a workday) crouch and climb ladders and could frequently lift and carry less than ten pounds but could only occasionally lift and carry ten pounds. (*Id.*) Havens based her opinion on Plaintiff's leg pain, hand numbness, neck pain, and migraines. (*Id.*; *see also id.* at 985, citing "chart notes/exams" and "assessment from patient" in support). Havens believed that on average, Plaintiff would miss work two or three times per month as a result of his impairments. (*Id.* at 985.)

On April 22, 2020, Havens sent a letter to the "Disability Review Board" confirming Plaintiff's acupuncture treatments and sharing her opinion that Plaintiff experiences chronic back and neck pain that limits his activity level and that repetitive motions of standing, sitting, twisting, and bending triggers sciatic nerve pain that radiates "into legs bilaterally to knees." (*Id.* at 1072; *see also id.* at 1095.) Havens acknowledged that Plaintiff receives relief from acupuncture but his pain begins to build again a few weeks after therapy. (*Id.*) Havens noted that Plaintiff's activity efforts are brief and not sustainable for more than two hours without neck or lumbar pain. (*Id.*)

///

///

---

[4] "Piriformis syndrome is caused when the piriformis muscle compresses the sciatic nerve, resulting in pain." *Melissa R. v. Kijakazi*, No. EDCV 21-0228-JPR, 2022 WL 22887017, at *4 (C.D. Cal. Aug. 10, 2022) (citation omitted).

PAGE 8 – OPINION AND ORDER

### 2.    The ALJ's Findings

The ALJ found that Havens' opinions were "not persuasive" because they were "not supported by findings." (*Id.* at 24, citing *id.* at 980-87, 1072, 1095.) The ALJ explained that Havens' April 2020 letter contained no specific functional limitations and her opinion that Plaintiff was unable to sustain activity for more than two hours was inconsistent with Plaintiff's conservative treatment and the lack of neurological deficits on exams. (*Id.*, citing *id.* at 1118-24, 1169-76, 1380-87.)

The ALJ further explained that Havens' September 2019 opinion was based in part on hand numbness, but the record does not establish a medically determinable hand impairment. (*Id.*) In addition, Havens' proffered limitations of less than sedentary work was not consistent with Plaintiff's intact motor strength on exam. (*Id.*, citing *id.* at 1121, 1173; *see also id.* at 24, noting that "[w]hile lower extremity strength was diminished on one exam, strength was 5/5 in all motor groups of the lower extremities on subsequent exam[,]" citing *id.* at 1292, 1387.)

### 3.    Disposition

The Court concludes that substantial evidence supports the ALJ's evaluation of Havens' September 2019 opinion.[5]

Plaintiff argues that Havens' reference to Plaintiff's hand numbness "is not sufficient reasoning for rejecting the entirety of the opinion's supportability" where Havens also based her opinion on Plaintiff's other impairments. (Pl.'s Br. at 6, "The ALJ here only assessed supportability of a portion of the opinion having to do with the lack of a hand impairment.") An ALJ may discount a medical opinion on supportability grounds where there is a lack of objective

---

[5] Plaintiff does not challenge the ALJ's evaluation of Havens' 2020 opinion. (*See* Pl.'s Br. at 3-8.)

PAGE 9 – OPINION AND ORDER

medical evidence to support the opinion. *See Waldram v. Kijakazi*, No. 22-35893, 2023 WL 8433769, at *1-2 (9th Cir. Dec. 5, 2023) (finding that the ALJ did not err in discounting on supportability grounds a medical opinion that was contradicted by "unremarkable" objective medical evidence); *see also* 20 C.F.R. § 416.920c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Further, an ALJ may discount a portion of a medical opinion based on its lack of supportability. *See, e.g.*, *Dunning v. Colvin*, No. 24-803, 2025 WL 262338, at *1 (9th Cir. Jan. 22, 2025) ("The ALJ determines the persuasiveness of medical opinions. The most important factors when evaluating persuasiveness of medical opinions are supportability and consistency. The ALJ found that part of [the] opinion was not persuasive because certain opinions . . . were not supported by objective evidence and were inconsistent with other evidence in the record. . . . These determinations are supported by substantial evidence." (citing 20 C.F.R. § 404.1520c(a))). Thus, the Court finds that the ALJ did not err in discounting Havens' opinion in part because it relied on a finding not supported by the objective medical evidence.

In any event, Plaintiff fails to acknowledge that the ALJ also discounted Havens' opinion on the ground that it was not "supported by findings" (Tr. 24), and Plaintiff does not address that Havens' opinion did not include specific findings sufficient to support the extreme limitations she proffers.

With respect to consistency, Plaintiff challenges the ALJ's reliance on medical records reflecting Plaintiff's intact motor strength, arguing that the ALJ "cherry picked" records reflecting normal functionality while ignoring contradictory records. (*See* Pl.'s Br. at 6-7.)

PAGE 10 – OPINION AND ORDER

Plaintiff does not dispute the medical evidence on which the ALJ relied, but instead cites other medical records reflecting 3/5 or 4/5 strength in Plaintiff's lower extremities, diminished sensation, reduced range of motion, and other issues. (*Id.*) Although Plaintiff weighs the evidence differently, the Court finds that substantial evidence in the record supports the ALJ's interpretation of the record and therefore the Court "must uphold" the ALJ's opinion. *See Steirer v. Kijakazi*, No. 22-16792, 2023 WL 6999450, at *1 (9th Cir. Oct. 24, 2023) ("The ALJ did not err. The ALJ evaluated the consistency and supportability of the opinions by weighing each against[, inter alia,] objective clinical findings[.] Based on the ALJ's interpretation of the evidence, she rejected the medical opinions . . . as extreme. Because the record supports her interpretation, we must uphold the ALJ's decision." (simplified) (first citing 20 C.F.R. § 416.920c(a); then quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); then citing *Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir. 2020); and then citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014))); *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." (quoting *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001))).

For these reasons, the Court finds that the ALJ adequately addressed the supportability and consistency of Havens' September 2019 opinion and substantial evidence supported the ALJ's interpretation. *See Stanton v. O'Malley*, No. 23-35474, 2024 WL 4224622, at *1 (9th Cir. Sept. 18, 2024) ("An ALJ must assess the persuasiveness of the relevant medical opinions and explain how she considered the supportability and consistency factors. . . . [T]he ALJ sufficiently explained her analysis, and her conclusions are supported by substantial evidence in the record." (first citing 20 C.F.R. § 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92)).

///

PAGE 11 – OPINION AND ORDER

## II.    SYMPTOM TESTIMONY

Plaintiff also argues that the ALJ erred by discounting his symptom testimony. (Pl.'s Br. at 8-12.) The Commissioner responds that the ALJ appropriately discounted Plaintiff's symptoms as inconsistent with his conservative treatment, the objective medical evidence, a consultative examination, and his daily activities, noting that Plaintiff does not challenge the ALJ's analysis regarding his conservative treatment or consultative examination. (Def.'s Br. at 2-10.)

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 21.) The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ met the required standard here.

///

PAGE 12 – OPINION AND ORDER

The ALJ discounted Plaintiff's testimony regarding his physical limitations on several grounds, including that the "record reflects good response to treatment." (Tr. 22.) In support, the ALJ noted that Plaintiff "has undergone chiropractic treatment, acupuncture, and massage for his pain complaints" and "reported the treatments are helpful[.]" (*Id.*) The ALJ also noted that Plaintiff treated his symptoms with Flexeril and testified that it was effective. (*Id.*; *see also id.* at 23, "[Plaintiff] obtained his first lumbar MRI in late 2023 and it shows only one issue, which doctors are treating conservatively. He uses only Flexeril, no Tylenol or other pain pills.").

An ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment or medication. *See Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted). That rationale assumes that "[i]mpairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's conclusion that Plaintiff received relief from his symptoms with treatment was supported by substantial evidence in the record (*see* Tr. 22, citing supporting medical records), which Plaintiff does not challenge on appeal.[6] *See Michelle C. v. Comm'r of Soc. Sec.*, No. 2:17-

---

[6] Plaintiff also fails to challenge the ALJ's discounting of his testimony based on evidence that he exhibited "poor effort and inconsistencies" at his August 2021 consultative examination. (Tr. 21.) A claimant's poor effort during a consultative examination is another clear and convincing reason to discount symptom testimony and was supported by substantial evidence here. *See, e.g.*, *Bobbie A. v. Comm'r Soc. Sec.*, No. 2:25-cv-00383-RLP, 2026 WL

PAGE 13 – OPINION AND ORDER

cv-00339-MKD, 2018 WL 6606071, at *7 (E.D. Wash. Dec. 17, 2018) ("Plaintiff failed to challenge the ALJ's conclusion that Plaintiff's reported symptoms improved with treatment. Thus, any challenge is waived." (first citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); and then citing *Kim v. Kang,* 154 F.3d 996, 1000 (9th Cir. 1998))). The Court concludes that Plaintiff's effective treatment of his symptoms was a specific, clear, and convincing reason to discount his testimony supported by substantial evidence in the record and therefore the ALJ did not err in evaluating Plaintiff's symptom testimony.[7]

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 21st day of April, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

908548, at *9 (E.D. Wash. Apr. 2, 2026) (holding that the ALJ "did not commit legal error in rejecting [the claimant's] testimony" where "the ALJ discounted [the claimant]'s symptom testimony due to evidence of poor effort during her consultative examination" (first citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); and then citing *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002))).

[7] Based on the Court's conclusion that the ALJ provided at least one clear and convincing reason to discount Plaintiff's testimony, the Court does not address Plaintiff's arguments regarding the ALJ's other reasons. *See Laurie A. R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-5461-DWC, 2023 WL 2300645, at *7 (W.D. Wash. Mar. 1, 2023), *aff'd*, No. 23-35265, 2024 WL 3898560 (9th Cir. Aug. 22, 2024) ("In sum, the ALJ has provided at least one reason, supported by substantial evidence, in discounting Plaintiff's testimony regarding her physical and mental health symptoms. Thus, the Court need not assess whether other reasons provided by the ALJ are erroneous because they would be deemed harmless." (citing *Carmickle,* 533 F.3d at 1162)).

PAGE 14 – OPINION AND ORDER